OPINION OF THE COURT
William H. Bristol, J.
Defendant, William G. Beeney, appeals from a judgment of conviction entered against him in Irondequoit Town Court, *202 Honorable P. Keely Costello presiding. Following a nonjury trial on June 22, 1998, the defendant was found guilty of impeding traffic, a violation of Vehicle and Traffic Law § 1181 (a). On August 10, 1998, the local court imposed a fine of $40 and a surcharge of $30.
For the reasons that follow, the judgment of the local court is reversed and defendant’s conviction is vacated.
FACTS
According to the trial record, on April 3, 1998, at approximately 10:50 a.m., the defendant, William Beeney, was driving northbound on Route 1-590 in his green Toyota. He was traveling in the far right-hand lane at a speed of approximately 55 miles per hour as he passed the exit for Browncroft Boulevard. At this point, Mr. Beeney observed in his rear-view mirror a vehicle come up behind him and proceed to follow him extremely closely. Already in the right-hand lane, Mr. Beeney slowed his vehicle in an effort to prompt this perceived “tailgater” to move into the next lane and pass him. This effort failed. Indeed, when Mr. Beeney gave this driver an opportunity to pass, not only did he refuse to do so, but he pulled even closer behind Mr. Beeney. Aware of a phenomenon called “road rage”, Mr. Beeney became concerned that the driver of this vehicle might cause him harm.
As he passed by the Tryon Park area in the Town of Irondequoit, Mr. Beeney saw a New York State Trooper’s vehicle parked on the right shoulder of 1-590. In an effort to attract the Trooper’s attention, Mr. Beeney tapped his brake pedal to cause his break lights to flash, honked his horn and, as he passed by, he waved his hand and looked directly at the Trooper. Trooper John Rowe observed these actions, saw three vehicles behind the green Toyota driven by the defendant and visually estimated that defendant was traveling at 30 miles per hour. He completed the stop in which he had been engaged, reentered his police vehicle and went after Mr. Beeney. While doing so, further north near the Norton Street exit, Trooper Rowe observed two different cars traveling behind the defendant and estimated their speed to be 45 miles per hour. Trooper Rowe effectuated a traffic stop of the defendant, spoke with Mr. Beeney and, ultimately, charged him, by a simplified traffic information, with impeding traffic in violation of Vehicle and Traffic Law § 1181 (a).
Upon examination by the trial court, Trooper Rowe explained why the vehicles traveling behind Mr. Beeney could not pass *203 him: “There was other traffic moving at a rate of speed that was approximately sixty miles per hour that day in those center and left lanes, and to not let the other vehicles out there that were traveling and he was traveling at such a slow rate of speed, one that braked in the center lane and the other vehicles were able to get out in that center lane and get around Mr. Beeney [sic].” (T.M., at 19.) Upon further inquiry by the court, Trooper Rowe testified as follows:
“the court: What was the difference in distance from the first occasion when you saw the cars behind Mr. Beeney and the second? Are we talking in terms of a mile or three tenths of a mile, or half a mile? What was the distance?
“trooper rowe: Between the Tryon Park area and the Norton Street area, probably about a mile and a quarter. Maybe a mile and a half.
“the court: So between that particular distance the vehicles that were following behind him initially, at some point in time, passed him and a second group of vehicles were following. Is that your testimony?
“trooper rowe: Yes, sir, that is correct.” (T.M., at 20-21.) Judge Costello issued a written decision and verdict dated July 20, 1998 which stated, in relevant part:
“The statute provides that a motorist’s speed cannot be so slow so as to impede traffic. The Defendant was traveling at a speed of 30 to 45 mph (10 to 25 miles per hour less than the posted speed limit) on a highway where the posted speed limit is 55 mph, and resulted in impeding two to three cars without a mechanical reason (equipment failure) or a safety reason (ie: snow or rain). This action constitutes a violation of the law. With traffic passing at 55 mph in the left lane, it would, in fact, be dangerous for the cars behind the Defendant traveling at 30-45 mph, to pass the Defendant’s car safely.
“The Defendant William G. Beeney, is guilty of a violation of section 1181(a) of the Vehicle and Traffic Law.”
It is from this decision that defendant appeals. He asserts, inter alia, that the People failed to prove that he was traveling at an unreasonably slow speed or that he was impeding traffic.
LAW
Vehicle and Traffic Law § 1181 (a) reads as follows: “No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law.”
*204 Most, if not all, States have provisions in their law relating to speed limits on highways and roads. Many have statutes that regulate the minimum speed limits and, indeed, several States use virtually identical language to New York’s Vehicle and Traffic Law § 1181 (a).[1] This court has been unable to find any published or unpublished New York State court decisions interpreting the statute. There are, however, a few published decisions of sister-State jurisdictions which provide guidance.
In Commonwealth v Robbins (441 Pa Super 437, 657 A2d 1003 [1995]), the Pennsylvania Superior Court found that the defendant was impeding traffic by traveling at a slow speed. According to the testimony of one officer, Robbins was driving in a 45-mile-per-hour, no-passing zone with his four-way flashers on while approximately 17 to 20 cars were backed up behind him. Another officer, who observed the defendant shortly after the first, testified that Robbins was traveling approximately 17 miles per hour in a 35-mile-per-hour, no-passing zone and that 18 to 20 cars were backed up behind him. In concluding that the defendant impeded the normal and *205 reasonable movement of traffic, the court found: “All that needed to be shown was that Appellant was operating his vehicle at such a slow speed that it was an impediment to the normal and reasonable movement of traffic. The testimony of the two officers indicated that Appellant was driving very slowly at a rate of speed of about 17 miles per hour through no-passing zones with speed limits of 35 and 45 miles per hour. The officers also mentioned that between 18 or 20 cars were trailing behind Appellant and the operators of those vehicles were angry, raising their fists and honking their horns at Appellant.” (Commonwealth v Robbins, supra, 441 Pa Super, at 440, 657 A2d, at 1004.)
In Salter v North Dakota Dept. of Transp. (505 NW2d 111 [1993]), the Supreme Court of North Dakota confronted the issue of whether impeding traffic due to slow speed (in violation of ND Cent Code § 39-09-09 [1]), among other factors, amounted to reasonable and articulable suspicion for a traffic stop. In determining that the record did not support a conclusion that the defendant was impeding traffic,[2] the court offered the following helpful dictum: “There is no evidence of the length of the no-passing zone, nor do we know if there was one, five, or ten cars coming up behind Salter and Officer Polasky. We do not know if Salter was truly impeding traffic in violation of the statute, or if Salter’s relatively slow speed only momentarily delayed some drivers from traveling at higher speeds while they traveled through a short no-passing zone. The conclusion urged by the Department is simply not supported by the facts in this record.” (Salter v North Dakota Dept. of Transp., supra, at 114.)
Like Salter (supra), the Michigan Supreme Court in People v Parisi (393 Mich 31, 222 NW2d 757 [1974]) confronted the issue of whether slow speed alone amounted to reasonable, articulable suspicion for a traffic stop and, like the North Dakota Supreme Court, found that it did not. In Parisi (supra), the reasons advanced by the officer for stopping the defendant’s vehicle were: (1) the occupants’ young ages (Saline, Michigan, had a curfew law in effect at the time); and (2) that the vehicle was traveling at a speed of 25 miles per hour, first in a 35-mile-per-hour, and then a 45-mile-per-hour, zone. In concluding that the stop was not warranted, the Michigan Supreme Court found: “Given the absence of a minimum speed requirement, erratic driving, interference with traffic or some other *206 reason of substance, we must conclude that this alone was not sufficient to warrant a stop.” (People v Parisi, supra, 393 Mich, at 35, 222 NW2d, at 759.)
Similarly, in People v Rotkvich (256 Ill App 3d 124, 628 NE2d 888 [1993]) and People v Brand (71 Ill App 3d 698, 390 NE2d 65 [1979]), the Appellate Court of Illinois, First District, found that driving slowly, without more, does not constitute a violation which would give rise to reasonable articulable suspicion for a stop. In so finding, the court held: “While a very slowly driven vehicle may pose a hazard to other motorists who operate their vehicles at a faster rate * * * the record does not demonstrate that defendant’s manner of driving resulted in a substantial danger to other motorists. The incident in question occurred on a suburban roadway at 10:30 a. m.; there was no posted minimum speed limit * * * and no indication that traffic was affected in any manner by defendant’s conduct.” (People v Brand, supra, 71 Ill App 3d, at 700-701, 390 NE2d, at 68 [citations omitted].)
According to the courts of Pennsylvania, North Dakota, Michigan and Illinois, the dispositive factor when determining whether slow speed is a violation (or may serve as reasonable articulable suspicion for a stop) is its effect upon other drivers. In other words, whether the slowness impedes traffic so as to pose a real danger to other motorists, as opposed to potential danger or temporary inconvenience.
These sister-State holdings honor the admonition of McKinney’s Consolidated Laws of NY, Book 1, Statutes § 94 which states: “So the language employed in a statute should be given a reasonable and sensible construction to carry out, if possible, the intention of the Legislature.” Surely the Legislature did not intend that drivers operating their vehicles at the posted speed limit (55 miles per hour) on a three-lane, super-highway should be charged with violating Vehicle and Traffic Law § 1181 (a) if other drivers, with tacit police acceptance,[3] ignore the speed limit and as a result, may be forced to slow down and then pass their law-abiding fellow drivers.
*207 Here, Mr. Beeney was driving on a controlled access, three-lane, one-way super-highway. He was in the right-hand lane designated for slower moving traffic. There is nothing in the record to suggest that the vehicles traveling behind Mr. Beeney were not free to pass him. Trooper Rowe’s confusing testimony, quoted above, seemingly suggests that these drivers could not pass Mr. Beeney because other vehicles were traveling “approximately sixty miles per hour” in the center lane. Yet, Trooper Rowe contradicts this testimony when he later states that the same three cars that were trailing Mr. Beeney near Tryon Park had passed him, and IV4 to IV2 miles farther on down the road different cars were behind the defendant.
Although Mr. Beeney was traveling at a speed below the posted maximum limit, and although his concerns about dangerous, enraged drivers may have been unfounded, the record, viewed in a light most favorable to the People and giving great weight to the credibility findings of the thoughtful and experienced presiding Town Justice, fails to show as a matter of law that there existed a substantially dangerous condition as created by Mr. Beeney’s below speed limit driving that not just impeded traffic, but, as required by law, impeded the normal and reasonable movement of traffic. (See, Vehicle and Traffic Law § 1181 [a].) Ironically, Officer Rowe and Mr. Beeney exchanged the following colloquy during cross-examination:
“defendant: Now, Officer Rowe, in regard to tailgating, does it sound like a prudent individual if a person is tailgating you, an aggressive person is tailgating you, that you are to slow down and let the person pass?
“trooper rowe: Slow down and let the person pass or pull over to the shoulder of the road.”
Were law enforcement officers to charge every driver who caused another motorist to wait a moment or two to pass him (i.e., to impede his progress), they would do little else but write traffic tickets. As any motorist knows, sometimes there are drivers, for any number of reasons, who choose not to travel at the maximum speed limit. So long as such a driver does not impede the normal and reasonable flow of traffic so as to create a clear, present and real danger, he is not violating the law. Of course, one can imagine a situation like that in Robbins (supra). While one may respect the right of an individual to drive at slower speeds, one cannot, as Mr. Robbins did, travel 13 to 23 miles per hour below the maximum posted limit in an area where other drivers are not legally permitted to pass. Such conduct certainly impedes the “normal and reasonable move *208 ment of traffic” in a way that creates a clear, present and real danger. The same cannot be said to have occurred here where the record shows, at best, that the defendant’s slower speed briefly delayed faster drivers but did not endanger them. While such a delay may be annoying, it does not result in abnormal and unreasonable movement of traffic.
Accordingly, the judgment of conviction herein must be, and hereby is, reversed and vacated.

. For example, the following States have statutes similar to New York’s Vehicle and Traffic Law § 1181 (a) (this list is by no means exhaustive): Alabama — Alabama Code § 32-5A-174; Arizona — Arizona Revised Statutes Annotated § 28-704; Arkansas — Arkansas Code Annotated § 27-51-208; California — California Vehicle Code § 22400; Colorado — Colorado Revised Statutes Annotated § 42-4-1103; Connecticut- — Connecticut General Statutes Annotated § 14-220; Delaware — Delaware Code Annotated, title 21, § 4171; Florida — Florida Statutes Annotated § 316.183; Georgia — Georgia Code Annotated § 40-6-184; Hawaii — Hawaii Revised Statutes Annotated § 291C-102; Illinois — 625 Illinois Compiled Statutes Annotated 5/11-606; Indiana — Indiana Code Annotated § 9-21-5-8; Kansas — Kansas Statutes Annotated § 8-1561; Louisiana — Louisiana Revised Statutes Annotated § 32:63; Maine— Maine Revised Statutes Annotated, title 29-A, § 2075; Massachusetts — Massachusetts General Laws Annotated, chapter 90, § 19J; Michigan — Michigan Compiled Laws Annotated § 257.628; Montana — Montana Code Annotated § 61-8-311; Nebraska — Nebraska Revised Statutes § 60-6, 193; Nevada-Nevada Revised Statutes § 484.371; New Hampshire — New Hampshire Revised Statutes Annotated § 265:64; New Mexico — -New Mexico Statutes Annotated § 66-7-305; North Dakota — North Dakota Century Code § 39-09-09; Ohio — Ohio Revised Code Annotated § 4511.22; Oklahoma — Oklahoma Statutes Annotated, title 47, § 11-804; Pennsylvania — 75 Pennsylvania Consolidated Statutes Annotated § 3364; Puerto Rico — Puerto Rico Laws Annotated, title 9, § 842; South Carolina — South Carolina Code Annotated § 56-5-1560; South Dakota — South Dakota Codified Laws § 32-25-5.2; Tennessee — Tennessee Code Annotated § 55-8-154; Texas — Texas Transportation Code Annotated § 545.363; Utah — Utah Code Annotated § 41-6-49; Virginia — Virginia Code Annotated § 46.2-877; Washington — Washington Revised Code Annotated § 46.61.425; West Virginia — West Virginia Code § 17C-6-3a; Wisconsin — Wisconsin Statutes Annotated § 349.11; Wyoming — Wyoming Statutes Annotated § 31-5-304.

. Salter was traveling 30 to 35 miles per hour in a 50-mile-per-hour zone.

. On cross-examination, Trooper Rowe made the following statement: “enforcing the speed limit to a strict fifty-five miles per hour is virtually impossible at this point because people have been allowed to get away with speeding at five or ten miles above for so long. That trying to slow traffic down to fifty-five miles per hour would be virtually impossible at this point in time. Traffic flow there, that section of roadway and interstate around and in the City of Rochester, is approximately sixty-two to sixty-three miles per hour. That is your average speed of traffic.”