# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 8, 2008 Session Heard at Jacksboro[1]

## STATE OF TENNESSEE  v.  RICHARD ADAM HANNAH ET AL.

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Hamilton County**
**Nos. 254484, 254485, 254486 & 254487      Rebecca J. Stern, Judge**

---

**No. E2005-02833-SC-R11-CD - Filed June 23, 2008**

---

We granted the State's application for permission to appeal in order to construe Tennessee Code Annotated section 55-8-154(a) (2004), the impeding traffic statute. The trial court held that the driver of a slow-moving vehicle does not impede traffic, unless other traffic is made to come to a stop. The Court of Criminal Appeals affirmed. Upon review, we hold that the trial court based its decision on an erroneous interpretation of the statute. Therefore, we reverse the trial court and remand for a new suppression hearing.

### Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals is Reversed and Remanded

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Leslie E. Price, Assistant Attorney General; William H. Cox, III, District Attorney General; and Boyd Patterson, Assistant District Attorney General, for the appellant, the State of Tennessee.

Brandon Raulson, Chattanooga, Tennessee, for the appellee, Richard Adam Hannah.

Myrlene R. Marsa, Chattanooga, Tennessee for the appellee, Larry Darnell Penn.

David R. Barrow, Chattanooga, Tennessee for the appellee, Tracy Lee Ray.

---

[1] Oral argument was heard in this case on May 8, 2008, in Jacksboro, Campbell County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

-1-

**OPINION**

**I. Factual and Procedural Background**

On June 15, 2005, the Hamilton County Grand Jury indicted the defendants, Richard Adam Hannah, Larry Darnell Penn, and Tracy Lee Ray, for possession of more than one-half gram of cocaine with intent to sell or deliver and possession of marijuana with intent to sell or deliver. In addition, Defendant Hannah was indicted for driving without a valid driver's license. The defendants filed motions to suppress the evidence.

The State presented the following evidence at the suppression hearing. Joseph Shaw, a patrol officer with the Chattanooga Police Department, testified that on May 11, 2005, at approximately 1:00 a.m., he observed a dark-colored Nissan Altima traveling southbound in the left lane of Market Street, which is a four-lane roadway, at a speed of approximately twenty miles per hour. While no minimum speed limit was posted, the posted maximum speed limit was thirty-five miles per hour. Officer Shaw testified that the Altima's slow speed was unusual for the area because other automobiles would generally exceed the posted maximum speed limit. Officer Shaw followed the Altima and observed that it obeyed all of the traffic signals and did not exceed twenty-five miles per hour. Even though the Altima never forced approaching automobiles to completely stop in the roadway, Officer Shaw testified that "most traffic was doing double [the Altima's] speed.[2] So when [approaching automobiles] would come up behind us they would have to brake fairly quickly and change lanes in order to pass. And there was moderate traffic even for that time of night on that road."

After following the Altima for approximately fifteen to seventeen blocks, Officer Shaw initiated a traffic stop. Officer Shaw stated that he requested Defendant Hannah, the driver, to step out of the Altima and to produce his driver's license. Defendant Hannah was unable to produce either a driver's license or state-issued identification. Furthermore, Officer Shaw described that Defendant Hannah mumbled, his eyes were glassy, and his eyelids were heavy. Even though Officer Shaw could not smell any alcohol, he noted that Defendant Hannah appeared "to definitely be intoxicated."

At this point in the suppression hearing, the trial court interrupted the police officer's testimony, opining that there were problems with the traffic stop. The State argued that the police officer's stop was legal because the driver's slow speed was impeding traffic in violation of Tennessee Code Annotated section 55-8-154(a), which provides: "No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or compliance with law." In addition, the State asserted that Officer Shaw had reasonable suspicion to stop the Altima to determine whether the driver was experiencing a medical emergency.

---

[2] Apparently, the other vehicles were exceeding the posted maximum speed limit by five to ten miles per hour.

After considering the impeding traffic statute, the trial court defined "impede" to mean "coming to a stop and having to wait for some unreasonable amount of time and not being able to go around him." Consequently, the trial court granted the defendants' motions to suppress the evidence because the proof did not establish that approaching automobiles had to stop behind the defendants' Altima.[3] The trial court did not consider the State's alternative argument that Officer Shaw was justified in stopping the defendants' Altima to ascertain whether the driver was suffering from a medical emergency.

The State appealed. The Court of Criminal Appeals agreed with the trial court's interpretation of "impede" and affirmed. The intermediate appellate court expanded on the trial court's reasoning and noted that "impede" is defined as: "to retard in movement or progress by means of obstacles or hindrances; obstruct; hinder." State v. Hannah, No. E2005-02833-CCA-R3-CD, 2007 WL 1628864, at *4 (Tenn. Crim. App. Jun. 6, 2007) (quoting Webster's College Dictionary 674 (1990)). In addition, the Court of Criminal Appeals stated that "[t]o obstruct something is 'to hinder, interrupt[,] or delay the passage, progress, or course of.'" Hannah, 2007 WL 1628864 at *4 (quoting Webster's College Dictionary 935 (1990)).

We granted the State's application for permission to appeal to determine whether Tennessee Code Annotated section 55-8-154(a) requires that an automobile be stopped or cause other automobiles to stop in order to "impede" traffic. Upon review of the record, we hold that the plain language of the statute does not require an automobile to stop or cause other automobiles to stop in order for traffic to be "impeded." Because the trial court based its decision to grant the defendants' motion to suppress on erroneous grounds and pretermitted the suppression hearing without hearing all of the State's proof or considering its alternative argument regarding the police officer's reasonable suspicion or probable cause to stop the Altima, we reverse the judgment of the trial court and remand for a new suppression hearing.

## II. Analysis

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution safeguard individuals from unreasonable searches and seizures. As a general rule, police officers cannot conduct a search unless they possess a judicial warrant that was obtained after a showing of probable cause to believe a crime has been committed. See Payton v. New York, 445 U.S. 573, 586 (1980); R.D.S. v. State, 245 S.W.3d 356, 365-66 (Tenn. 2008). Therefore, a warrantless search is presumed unreasonable, "unless it falls within one of the narrow and well-delineated exceptions to the warrants requirement." Flippo v. West Virginia, 528 U.S. 11, 13 (1999); accord. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). One such exception is that police officers may initiate a stop of an automobile "if the police have probable cause or reasonable suspicion to believe that a traffic violation has occurred." State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997); accord. Whren v. United States, 517 U.S. 806, 810 (1996); State v. Berrios, 235

---

[3] The record does not reveal what evidence was sought to be suppressed because the suppression hearing ended prematurely. We presume, however, that the State was prepared to present evidence that cocaine and marijuana were found on the defendants or in the Altima.

S.W.3d 99, 105 (Tenn. 2007) ("As a general rule, if the police have probable cause to believe a traffic violation has occurred, the stop is constitutionally reasonable."). The State has the burden of proof of establishing reasonable suspicion or probable cause by a preponderance of the evidence. Yeargan, 958 S.W.2d at 629.

On appeal, the State argues that the trial court and the Court of Criminal Appeals interpreted the statute too narrowly. It reasons that the plain language of the statute "indicates that a violation may occur when a person is 'driv[ing]' at a 'slow speed.'"[4] The defendants, on the other hand, argue that the trial court's interpretation does not create the legal precedent that an automobile or other automobiles must always come to a stop for the statute to be violated. In addition, the defendants maintain that regardless of the interpretation of "impede," Officer Shaw lacked probable cause or reasonable suspicion to stop the Altima because other automobiles were not "unreasonably inconvenienced" by Defendant Hannah's slow driving speed.

We review questions of statutory construction under a de novo standard with no presumption of correctness afforded to the trial court's conclusions. State v. Denton, 149 S.W.3d 1, 17 (Tenn. 2004); State v. Walls, 62 S.W.3d 119, 121 (Tenn. 2001). When construing statutes, we are to ascertain and give effect to the intention and purpose of the legislature. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). As such, we derive the legislature's intent "whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." Id. (quoting Lipscomb v. Doe, 32 S.W.3d 840, 844 (Tenn. 2000)) (citations omitted). "When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." Eastman Chem. Co., 151 S.W.3d at 507. However, if an ambiguity exists within the language of the statute, then we must turn to "the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose." Id. An ambiguous statute is one that communicates multiple meanings. Sallee v. Barrett, 171 S.W.3d 822, 828 (Tenn. 2005) (citing LeTellier v. LeTellier, 40 S.W.3d 490, 498 (Tenn. 2001)). Lastly, we presume "that the legislature purposefully chose each word used in a statute and that each word conveys a specific purpose and meaning." Denton, 149 S.W.3d at 17.

---

[4] Additionally, the State argues in its application for permission to appeal that Officer Shaw had reasonable suspicion to stop the defendants' Altima for violating Tennessee Code Annotated section 55-8-115(b) (2004), which provides:

> Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway.

However, because the State did not advance this argument before either the trial court or the Court of Criminal Appeals, it is waived.

We begin our analysis by examining the plain language of the statute, which mandates that "[n]o person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law." Tenn. Code Ann. § 55-8-154(a). Clearly, the trial court was correct that a driver can "impede" traffic if he or she causes other automobiles to come to a stop. However, that is not the only situation in which a driver can violate the statute. The legislature's use of the phrase "slow speed" indicates that the statute's scope is much more broad. While the legislature did not delineate all of the situations in which a driver "impedes" traffic, we believe that the statute's plain language is sufficiently clear enough for us to conclude that a stop of traffic is not the only situation in which a driver may violate the statute. Moreover, had the legislature intended for a violation to occur only when an automobile was completely stopped in the roadway or caused other automobiles to stop, we presume it would have said so. Accordingly, we agree with the State that the trial court's interpretation that a driver must cause other automobiles to come to a stop and wait for an unreasonable amount of time is too restrictive and would essentially emasculate the import of the statute.

Having concluded that the trial court's interpretation was too restrictive, the more difficult question arises: when does a slow-moving automobile "impede" traffic? While a driver does not have to be stopped in the roadway or cause other automobiles to stop, we believe that a slow driver does not violate the statute by merely causing minor inconvenience to other motorists. For example, other jurisdictions that have considered impeding traffic statutes, which are nearly identical to Tennessee's statute, have focused on whether a driver's slow speed blocked or otherwise backed-up traffic. See, e.g., State v. Haataja, 611 N.W.2d 353, 355 (Minn. Ct. App. 2000) (holding that a police officer had reasonable suspicion to initiate a stop of an automobile where the driver was traveling between ten and fifteen miles per hour slower than the posted maximum speed limit and other automobiles were backed-up behind the defendant); State v. Benders, 146 P.3d 751, 754 (Mont. 2006) (holding that driving approximately thirty to forty-five miles per hour under the posted maximum speed limit and a build-up of at least four automobiles gave a police officer "sufficient information, under the totality of the circumstances, to establish particularized suspicion that [the defendant] was violating the law against impeding traffic"); Commonwealth v. Robbins, 657 A.2d 1003, 1004 (Pa. Super. Ct. 1995) (affirming the defendant's conviction of impeding traffic where he was driving between eighteen and twenty-eight miles per hour below the posted maximum speed limit in a no-passing zone and approximately eighteen-to-twenty automobiles where backed-up behind the defendant); State v. Bauhuin, 416 N.W.2d 61, 63 (Wis. 1987) (holding that a police officer had reasonable suspicion to believe the defendant was impeding traffic where the defendant was driving approximately seventeen miles per hour in a twenty-five mile per hour speed zone and several automobiles were backed-up behind the defendant).

Employing similar reasoning, other states have concluded that when a driver's slow speed does not affect other motorists then the driver is not impeding traffic. See, e.g., People v. Brand, 390 N.E.2d 65, 68 (Ill. App. Ct. 1979) (concluding that a police officer lacked reasonable suspicion to initiate a stop of the defendant's automobile for impeding traffic when there was no evidence in the record that the defendant's slow speed affected other drivers); People v. Beeney, 694 N.Y.S.2d 583,

586 (N.Y. Co. Ct. 1999) (noting that "the dispositive factor when determining whether slow speed is a violation (or may serve as reasonable articulable suspicion for a stop) is its effect upon other drivers"); accord. Salter v. North Dakota Dep't of Transp., 505 N.W.2d 111 (N.D. 1993); State v. Tiffin, 121 P.3d 9 (Or. Ct. App. 2005); Davy v. State, 67 S.W.3d 382 (Tex. App. 2001).

We conclude, therefore, that a driver of a slow-moving automobile impedes traffic when his or her reduced speed interrupts the "normal and reasonable movement of traffic" by blocking or backing up traffic, unless the "reduced speed is necessary for safe operation or in compliance with the law." Furthermore, while not an exhaustive list, we believe that when a trial court reviews whether a slow driver impeded traffic it should consider how slow the driver's automobile was traveling, the posted maximum speed limit, the posted minimum speed limit, if any, the effect on traffic, the duration of the effect on traffic, and the normal and reasonable flow of traffic in that area.[5] Also, the trial court should consider whether other traffic could safely pass the slow-moving automobile in the right lane as provided in Tennessee Code Annotated section 55-8-118 (2004).[6]

Accordingly, we hold that the trial court erroneously interpreted Tennessee Code Annotated section 55-8-154(a). Furthermore, because the trial court halted the suppression hearing before Officer Shaw finished testifying and did not consider the State's alternative arguments that Officer Shaw was justified in stopping the defendants' Altima to ascertain whether the driver was suffering from a medical emergency, we reverse the trial court and remand this matter for further factual and legal findings, including whether Defendant Hannah was impeding traffic, consistent with this opinion.

IV. Conclusion

---

[5] The defendants correctly argue that traffic traveling above the posted maximum speed should not be construed as "normal and reasonable" by a trial court. Such a determination would contradict the policy determination by the State or local governing body that a particular roadway's speed should be kept below a certain threshold.

[6] Tennessee Code Annotated section 55-8-118 provides:

> (a) The driver of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions: (1) When the vehicle overtaken is making or about to make a left turn; (2) Upon a street or highway with unobstructed pavement not occupied by parked vehicles of sufficient width for two (2) or more lines of moving vehicles in each direction; and (3) Upon a one-way street, or upon any roadway on which traffic is restricted to one (1) direction of movement, where the roadway is free from obstructions and of sufficient width for two (2) or more lines of moving vehicles.
>
> (b) The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main-traveled portion of the roadway.

In sum, we hold that the trial court based its decision to grant the defendants' motions to suppress the evidence on erroneous grounds. The plain language of the statute does not require either a slow-moving automobile or approaching automobiles to come to a stop in order for traffic to be "impeded." Furthermore, the trial court prematurely ended the suppression hearing without resolving all of the factual and legal issues presented by the parties. Therefore, we reverse the judgment of the trial court and remand for further factual and legal findings consistent with this opinion.

It appearing that the defendants are indigent, costs of this appeal shall be paid by the State of Tennessee, for which execution may issue if necessary.


_____ _____
WILLIAM M. BARKER, CHIEF JUSTICE