OPINION OF THE COURT
Andrew M. Engel, J.
The defendant is charged with driving while intoxicated, impeding traffic and operating a motor vehicle with excessively tinted windows, in violation of Vehicle and Traffic Law § 1192 (2), § 1181 (a) and § 375 (12-a) (b) (2), respectively.
On January 19, 2011, a Huntley and Dunaway[1] hearing was held, pursuant to a stipulation of the parties, to determine whether the defendant’s alleged statement was involuntarily made within the meaning of CPL 60.45, and whether there was probable cause or a reasonable suspicion to stop the defendant’s vehicle.
At a Huntley ¡Dunaway hearing, where a defendant challenges the legality of a seizure, along with statements and other evidence allegedly obtained as a result thereof, the People have the burden of going forward, in the first instance, to establish the legality of the police conduct. (People v Malinsky, 15 NY2d 86 [1965]; People v Wise, 46 NY2d 321 [1978]; People v Dodt, 61 NY2d 408 [1984]; People v Moses, 32 AD3d 866 [2d Dept 2006], lv denied 7 NY3d 927 [2006].) Once the prosecution has met this burden, the defendant has the ultimate burden of establishing the illegality of the police conduct, by a fair preponderance of the evidence. (People v Berrios, 28 NY2d 361 [1971]; People v Di Stefano, 38 NY2d 640 [1976]; People v Lombardi, 18 AD2d 177 [2d Dept 1963].) The burden is also on the People to prove, beyond a reasonable doubt, that the statements in question *203 were voluntarily made before they may be admitted into evidence on the People’s case-in-chief at trial. (People v Huntley, supra; People v Valerius, 31 NY2d 51 [1972]; People v Anderson, 42 NY2d 35 [1977].)
The People attempt to meet their burden through the testimony of Police Officer Brendan Barnes. The defendant did not call any witnesses. After listening to and observing the demeanor of Officer Barnes, the court finds his testimony to be credible and makes the following findings of fact:
On September 6, 2010, at approximately 5:00 a.m., Officer Barnes, a member of the Nassau County Police Department’s Sobriety Enforcement Team, was on duty in the vicinity of the intersection of Main Street and Front Street, in the Village of Hempstead. At that time, Officer Barnes was the driver of a vehicle, on Main Street, which was the fourth vehicle stopped at a red light at the aforesaid intersection. The first vehicle stopped at the light was a Nissan Pathfinder, which Officer Barnes identified as being driven by the defendant. There were two other vehicles stopped at the red light between Officer Barnes and the defendant.
When the traffic light turned green the defendant’s vehicle did not move. Officer Barnes indicated that he could not see the defendant doing anything unusual in his car at that time. There was no testimony as to whether or not the defendant had either of his turn signals activated or whether or not there was any oncoming traffic on Main Street traveling in the opposite direction of the defendant, Officer Barnes and the two other vehicles between them. Within seconds of the traffic light turning green, while the defendant remained sitting at the light, the two vehicles between the defendant and Officer Barnes moved around the defendant and continued on their way. Officer Barnes then pulled behind the defendant.
Approximately 30 seconds after the traffic light had turned green, the light turned yellow and the defendant proceeded to make a left turn onto Front Street. Officer Barnes did not testify that the defendant failed to signal this left-hand turn or that there was anything improper about the manner in which the defendant executed his turn.
Officer Barnes then followed the defendant past Washington Street, past Peninsula Boulevard and onto Ingraham Boulevard, onto which the defendant had turned. Officer Barnes did not testify that the defendant drove erratically or failed to signal his turn onto Ingraham Boulevard. Following this turn, however, *204 Officer Barnes activated his lights and pulled the defendant over. Officer Barnes testified unequivocally that he pulled the defendant over for violating Vehicle and Traffic Law § 1181 (a). Officer Barnes stated that the reason for the stop was because, “He [the defendant] was impeding traffic.”
After the stop, upon approaching the defendant’s vehicle, Officer Barnes observed that the windows of the vehicle were heavily tinted; and, a test conducted by the officer confirmed that the tint exceeded the legal limit. After the defendant rolled down his window, Officer Barnes noticed that the defendant’s eyes were watery and bloodshot; and, upon speaking with the defendant, Officer Barnes observed the aroma of alcohol on the defendant’s breath and that defendant’s speech was slurred. Officer Barnes asked the defendant if he had been drinking, to which the defendant responded, “I had two beers at work. I’m going home.” Some time thereafter the defendant was arrested and read his Miranda[2] rights.
The defendant argues that Vehicle and Traffic Law § 1181 (a), which addresses minimum speed regulations, has no application to the facts herein. According to the defendant, this being the statute for which he was initially stopped, there was no lawful basis for the stop, which amounted to an unreasonable seizure. Based thereon, the defendant argues that everything that followed the stop must be suppressed.
The People argue that Vehicle and Traffic Law § 1181 (a) addresses operating a motor vehicle at such a slow rate of speed as to impede traffic. According to the People, the defendant’s remaining sitting at a green light for almost its entire cycle, requiring other motorists to go around him, constituted a violation of this section, permitting Officer Barnes to stop the defendant.
It is well established that “the stopping of an automobile by the police constitutes an impermissible seizure.” (People v Sobotker, 43 NY2d 559, 563 [1978] [citations omitted].) Such a seizure may nevertheless be upheld “where a police officer has probable cause to believe that the driver of an automobile has committed a traffic violation.” (People v Robinson, 97 NY2d 341, 349 [2001]; see also Whren v United States, 517 US 806 [1996]; People v Boyd, 68 AD3d 889 [2d Dept 2009], lv denied 14 NY3d 838 [2010].) At a minimum, the police may stop a motor vehicle “when there exists at least a reasonable suspicion that *205 the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime.” (People v Spencer, 84 NY2d 749, 753 [1995] [citation omitted]; see also People v O’Hare, 73 AD3d 812, 813 [2d Dept 2010] [“A police officer may stop a car, inter alia, if the officer has a reasonable suspicion that a traffic infraction has been committed” (citation omitted)].) Reasonable suspicion, as used here, has been defined as “the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand.” (People v Cantor, 36 NY2d 106, 112-113 [1975]; see also People v William II, 98 NY2d 93 [2002]; People v Martinez, 80 NY2d 444 [1992].)
There is no question, as indicated hereinabove, that the basis for Officer Barnes’ stop of the defendant was an alleged violation of Vehicle and Traffic Law § 1181 (a), which provides, in pertinent part, “No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic.”
This court has found one reported case in the State of New York which addresses this statute. In People v Beeney (181 Misc 2d 201, 204 [Monroe County Ct 1999]) the court noted that, at that time, no “published or unpublished New York State court decisions interpreting the statute” could be found. The court further noted, however, that many states “have statutes that regulate the minimum speed limits and, indeed, several States use virtually identical language to New York’s Vehicle and Traffic Law § 1181 (a),” and that “[t]here are ... a few published decisions of sister-State jurisdictions which provide guidance.” (Id.) After reviewing these decisions, the court concluded that there are three elements to this statute, to wit: (1) operation of a motor vehicle below the speed limit, (2) which operation impedes the “normal and reasonable movement of traffic” and (3) “create[s] a clear, present and real danger.” (Beeney at 203, 207.) For the reasons set forth in Beeney, this court reaches the same conclusion and shall apply these elements to the facts herein.
While the testimony is clear that the defendant remained sitting at the traffic light after it turned green, with three other vehicles behind him, “[w]ere law enforcement officers to charge every driver who caused another motorist to wait a moment or two to pass him (i.e., to impede his progress), they would do little else but write traffic tickets.” (Id. at 207.)
Officer Barnes was clear that within seconds of the light turning green the two cars between him and the defendant moved *206 around the defendant and proceeded on their way, without any apparent difficulty. Such a momentary delay cannot provide the basis for a police stop for impeding traffic. (See Salter v North Dakota Dept. of Transp., 505 NW2d 111 [Sup Ct, ND 1993] [applying a virtually identical statute, the court found there was no reasonable and articulable basis to stop an automobile which was going 30 to 35 miles per hour in a 50-miles-per-hour no-passing zone, with cars coming up behind him, for impeding traffic].)
Once the two vehicles between the defendant and Officer Barnes proceeded, the only vehicle left behind the defendant was Officer Barnes himself. Officer Barnes, however, did not testify that he intended to pass the defendant; rather, he made it clear that it was his intention to follow the defendant. (See People v Rotkvich, 256 Ill App 3d 124, 628 NE2d 888 [1st Dist 1993] [the court affirmed the suppression of evidence in a driving under the influence of alcohol prosecution where there was no reasonable or articulable suspicion for stopping the defendant’s vehicle, which was traveling between 10 and 15 miles per hour in a 35-miles-per-hour zone, and the only cars on the road were two police cars, one of which followed the defendant and the other of which was not said to be impeded].)
There is also no indication in the matter before the court “that defendant’s manner of driving resulted in a substantial danger to other motorists.” (People v Brand, 71 Ill App 3d 698, 701, 390 NE2d 65, 68 [1st Dist 1979] [the court affirmed the granting of the defendant’s motion to suppress where the defendant drove 20 miles per hour in a 45 miles-per-hour zone for one-quarter mile, but there was no indication that the defendant’s slow speed either endangered other motorists or that other motorists were affected by the defendant’s conduct].)
Based upon all of the foregoing, the court finds that the defendant’s conduct, in merely waiting for the traffic light to turn yellow before making a lawful left-hand turn, without interfering with the reasonable progress of the other motorists present or creating a danger of any kind to any motorist, did not provide Officer Barnes with either probable cause to believe that the defendant had violated Vehicle and Traffic Law § 1181 (a) or reasonable suspicion that the defendant committed, was committing, or was about to commit a crime.
Where, as here, the stop of the defendant’s vehicle was unreasonable, any “subsequent discoveries . . . constitute derivative evidence obtained by an illegal seizure and therefore *207 should [be] suppressed.” (People v Ingle, 36 NY2d 413, 418-419 [1975] [citation omitted]; see also People v MacKenzie, 61 AD3d 703 [2d Dept 2009], lv denied 13 NY3d 798 [2009] [following an unreasonable stop, the defendant’s statement and breathalyzer results were suppressed].)
Accordingly, the defendant’s application to suppress all evidence recovered by the police following this unreasonable stop is granted.

. People v Huntley, 15 NY2d 72 (1965); Dunaway v New York, 442 US 200 (1979).

. Miranda v Arizona, 384 US 436 (1966).