## FLIPPO v. WEST VIRGINIA

No. 98–8770. Decided October 18, 1999

PER CURIAM.

Petitioner's motion to suppress evidence seized in a warrantless search of a "homicide crime scene" was denied on the ground that the police were entitled to make a thorough search of any crime scene and the objects found

12

there. Because the rule applied directly conflicts with *Mincey* v. *Arizona*, 437 U. S. 385 (1978), we reverse.

One night in 1996, petitioner and his wife were vacationing at a cabin in a state park. After petitioner called 911 to report that they had been attacked, the police arrived to find petitioner waiting outside the cabin, with injuries to his head and legs. After questioning him, an officer entered the building and found the body of petitioner's wife, with fatal head wounds. The officers closed off the area, took petitioner to the hospital, and searched the exterior and environs of the cabin for footprints or signs of forced entry. When a police photographer arrived at about 5:30 a.m., the officers reentered the building and proceeded to "process the crime scene." Brief in Opposition 5. For over 16 hours, they took photographs, collected evidence, and searched through the contents of the cabin. According to the trial court, "[a]t the crime scene, the investigating officers found on a table in Cabin 13, among other things, a briefcase, which they, in the ordinary course of investigating a homicide, opened, wherein they found and seized various photographs and negatives." Indictment No. 96–F–119 (Cir. Ct. Fayette County, W. Va., May 28, 1997), App. A to Pet. for Cert., p. 2.

Petitioner was indicted for the murder of his wife and moved to suppress the photographs and negatives discovered in an envelope in the closed briefcase during the search.[1] He argued that the police had obtained no warrant, and that no exception to the warrant requirement justified the search and seizure.

---

[1] The photographs included several taken of a man who appears to be taking off his jeans. He was later identified as Joel Boggess, a friend of petitioner and a member of the congregation of which petitioner was the minister. At trial, the prosecution introduced the photographs as evidence of petitioner's relationship with Mr. Boggess and argued that the victim's displeasure with this relationship was one of the reasons that petitioner may have been motivated to kill her.

In briefs to the trial court, petitioner contended that *Mincey* v. *Arizona, supra,* rejects a "crime scene exception" to the warrant requirement of the Fourth Amendment. The State also cited *Mincey;* it argued that the police may conduct an immediate investigation of a crime scene to preserve evidence from intentional or accidental destruction, *id.,* at 394, and characterized the police activity in this case as "crime scene search and inventory," Brief in Opposition 12. The State also relied on the "plain view" exception, *Mincey, supra,* at 393 (citing *Michigan* v. *Tyler,* 436 U. S. 499, 509–510 (1978)), noting only, however, that the briefcase was unlocked.

In denying the motion, the trial court said nothing about inventory or plain view, but instead approved the search as one of a "homicide crime scene":

> "The Court also concludes that investigating officers, having secured, for investigative purposes, the homicide crime scene, were clearly within the law to conduct a thorough investigation and examination of anything and everything found within the crime scene area. The examination of [the] briefcase found on the table near the body of a homicide victim in this case is clearly something an investigating officer could lawfully examine." App. A to Pet. for Cert., at 3.

After hearing an oral presentation of petitioner's petition for appeal of this ruling, and with the full record before it, the Supreme Court of Appeals of West Virginia denied discretionary review. No. 982196 (Jan. 13, 1999), App. B to Pet. for Cert.

A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions to the warrant requirement, *Katz* v. *United States,* 389 U. S. 347, 357 (1967), none of which the trial court invoked

here.[2]  It simply found that after the homicide crime scene was secured for investigation, a search of "anything and everything found within the crime scene area" was "within the law."   App. A to Pet. for Cert., at 3.

This position squarely conflicts with *Mincey* v. *Arizona, supra,* where we rejected the contention that there is a "murder scene exception" to the Warrant Clause of the Fourth Amendment.   We noted that police may make warrantless entries onto premises if they reasonably believe a person is in need of immediate aid and may make prompt warrantless searches of a homicide scene for possible other victims or a killer on the premises, *id.,* at 392, but we rejected any general "murder scene exception" as "inconsistent with the Fourth and Fourteenth Amendments— . . . the warrantless search of Mincey's apartment was not constitutionally permissible simply because a homicide had recently occurred there."   *Id.,* at 395; see also *Thompson* v. *Louisiana,* 469 U. S. 17, 21 (1984) *(per curiam).   Mincey* controls here.

Although the trial court made no attempt to distinguish *Mincey,* the State contends that the trial court's ruling is supportable on the theory that petitioner's direction of the police to the scene of the attack implied consent to search as

---

[2] The State suggests that the trial court's finding that the search was "within the law" could be read as premised on the theories of plain view, exigent circumstances, and inventory that the State advanced below. No trace of this reasoning appears in the trial court's opinion, which instead appears to undermine the State's interpretation.   It seems implausible that the court found that there was a risk of intentional or accidental destruction of evidence at a "secured" crime scene or that the authorities were performing a mere inventory search when the premises had been secured for "investigative purposes" and the officers opened the briefcase "in the ordinary course of investigating a homicide."   Nor does the court's validation of "investiga[ting] and examin[ing] . . . anything and everything found within the crime scene area," including photographs inside a closed briefcase, apparently rest on the plain-view exception.   App. A to Pet. for Cert., at 2, 3.

they did.   As in *Thompson* v. *Louisiana, supra,* at 23, however, we express no opinion on whether the search here might be justified as consensual, as "the issue of consent is ordinarily a factual issue unsuitable for our consideration in the first instance."   Nor, of course, do we take any position on the applicability of any other exception to the warrant rule, or the harmlessness *vel non* of any error in receiving this evidence.   Any such matters, properly raised, may be resolved on remand.   469 U. S., at 21; see also *United States* v. *Matlock,* 415 U. S. 164 (1974).

The motion for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted, the judgment of the Circuit Court of West Virginia, Fayette County, is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*