IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00300-CR

 

Sharon Keathley,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 249th District Court

Somervell County, Texas

Trial Court No. 249-00518

 



MEMORANDUM  Opinion










 

      Keathley appeals her conviction for
possession of less than one gram of methamphetamine.  See Tex. Health & Safety Code Ann.
§ 481.115(a)-(b) (Vernon 2003); id. § 481.102(6) (Vernon
2003).  We affirm.

      In Keathley’s two issues, she contends
that the trial court erred in overruling her motion to suppress the
methamphetamine.  Keathley was a passenger in a car that a Texas Department of
Public Safety trooper stopped for having a defective headlight.  See Tex. Transp. Code Ann.
§§ 542.301(a), 547.321 (Vernon 1999).  When the driver handed the trooper
the driver’s insurance card, the trooper saw a cellophane bag inside the
driver’s watchband.  When the trooper asked the driver what was in the bag, the
driver admitted that there was marijuana in the bag.  The trooper arrested the
driver for possession of marijuana.  See Tex. Health & Safety Code Ann. § 481.121(a) (Vernon
2003).  When the trooper then approached Keathley, Keathley appeared to be
putting something inside her shorts.  The trooper handcuffed Keathley, and
deputy sheriffs took Keathley to the county jail.  At the jail, Keathley
removed two cellophane bags of methamphetamine from her vagina.  

      “The job of an appellate court” in
reviewing the lower court’s decision on a motion to suppress “is to review the
decision of the lower court for an abuse of discretion.”  State v. Dixon, No. PD-0077-05, 2006 Tex. Crim. App. LEXIS 363, at *6-*7 (Tex. Crim. App. Feb.
15, 2006); accord Swain v. State, 181 S.W.3d 359, 365 (Tex. Crim.
App. 2005).  “We give almost total deference to a trial court’s express or
implied determination of historical facts and review de novo the court’s
application of the law of search and seizure to those facts.”  Dixon at *7; see Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App.
1997).  “We view the record in the light most favorable to the trial court’s
conclusion . . . .”  Dixon at *7; accord Swain
at 365; Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). 
“We . . . assume that the trial court made implicit findings of fact
supported in the record.”  Swain at 365; accord Balentine at
768.  “We will sustain the lower court’s ruling if it is reasonably supported
by the record and is correct on any theory of law applicable to the case.”  Dixon at *7; accord Swain at 365; State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000).  We “reverse the judgment only if it is
outside the zone of reasonable disagreement.”  Dixon at *7; see
 Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)
(op. on reh’g).  

      “The right of the people to be secure in
their persons, . . . against unreasonable searches and seizures,
shall not be violated . . . .”  U.S. Const. amend. IV; see id. amend. XIV; Tex. Const. art. I, § 9.  Texas courts generally interpret Texas Constitution Article I, Section 9, in accordance
with the Fourth Amendment to the United States Constitution.  See Johnson v.
State, 912 S.W.2d 227, 232-35 (Tex. Crim. App. 1995).  “A warrantless
search by the police is invalid unless it falls within one of the narrow and
well-delineated exceptions to the warrant requirement . . . .”  Flippo
v. West Virginia, 528 U.S. 11, 13 (1999).    “[I]f the scope of the search
exceeds that permitted by . . . the character of the relevant
exception from the warrant requirement, the subsequent seizure is
unconstitutional without more.”  Wilson v. Layne, 526 U.S. 603, 611 (1999) (quoting Horton v. California, 496 U.S. 128, 140 (1990)).  “[A]bsent
circumstances justifying a warrantless search, it is ‘constitutional error [to]
admit into evidence the fruits of the illegal search[.]’”  Powell v. Nevada,
511 U.S. 79, 85 (1994) (quoting Vale v. Louisiana, 399 U.S. 30, 35 (1970)) (1st alteration in Powell); accord Mapp v. Ohio, 367 U.S. 643
(1961); Weeks v. United States, 232 U.S. 383 (1914); Boyd v. United
States, 116 U.S. 616 (1886).  

      In Keathley’s first issue, she argues that
the detention of the driver exceeded the scope of the initial traffic stop.[1]  “[T]he general rule is that an investigative
stop can last no longer than necessary to effect the purpose of the stop.”  Kothe
v. State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).  “An officer conducts a
lawful temporary detention when he has reasonable suspicion to believe that an
individual is violating the law.”  Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  “Reasonable suspicion exists if the officer has specific,
articulable facts that, when combined with rational inferences from those
facts, would lead him to reasonably conclude that a particular person is, has
been, or soon will be engaged in criminal activity.”  Id.  “If, during a
valid traffic stop and detention, the officer develops reasonable suspicion
that the detainee is engaged in criminal activity, prolonged or continued
detention is justified.”  Haas v. State, 172 S.W.3d 42, 52 (Tex.
App.—Waco 2005, pet. ref’d).  

      Keathley argues that the valid purpose of
the traffic stop ended when the trooper told the driver that the trooper would
give the driver a warning without a citation.  The State argues that the
officer had reasonable suspicion to detain the driver temporarily for
investigation of the cellophane bag.  The trooper testified, however, that he
determined to ask the driver about the bag as soon as he saw it, before he
finished giving the driver a warning for the broken headlight, and that in the
trooper’s experience marijuana users often carry marijuana in such cellophane
bags.   Viewing the evidence in the light most favorable to the trial court’s
ruling, we hold that the trial court did not abuse its discretion in finding
that the trooper had reasonable suspicion to detain the driver.  

      In Keathley’s second issue, she argues
that she was arrested without probable cause, and that the search of her person
was thus illegal.  “A custodial arrest of a suspect based on probable cause is
a reasonable intrusion under the Fourth Amendment . . . .”  Illinois
v. Lafayette, 462 U.S. 640, 645 (1983) (quoting United States v.
Robinson, 414 U.S. 218, 235 (1973)); see Wong Sun v. United States, 371 U.S. 471 (1963).  “[T]he substance of all the definitions of
probable cause is a reasonable ground for belief of guilt.”  Maryland v.
Pringle, 540 U.S. 366, 371 (2003) (quoting Gates v. Illinois, 462 U.S. 213, 232 (1983)).  In the context of a search, “probable cause means ‘a fair
probability that contraband or evidence of a crime will be found.’”  Alabama
v. White, 496 U.S. 325, 330 (1990) (quoting United States v. Sokolow, 490
 U.S. 1, 7 (1989) (quoting Gates, 462 U.S. at 238)). “[P]robable cause
is a flexible, common-sense standard.”  Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality op.).  “[S]ubjective intentions play no role in ordinary,
probable-cause Fourth Amendment analysis.”  Arkansas v. Sullivan, 532 U.S. 769, 772 (2001) (quoting Whren v. United States, 517 U.S. 806, 813 (1996)).  Probable
cause “merely requires that the facts available to the officer would ‘warrant a
man of reasonable caution in the belief’ that certain items may be contraband
or stolen property or useful as evidence of a crime; it does not demand any
showing that such a belief be correct or more likely true than false.”  Brown
at 742 (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)); accord Henry v. United States, 361 U.S. 98, 102 (1959).  “A
‘practical, nontechnical’ probability that incriminating evidence is involved
is all that is required.”  Brown at 742 (quoting Brinegar v. United
States, 338 U.S. 160, 176 (1949)).  

      Keathley points to the trooper’s testimony
that he did not believe at the time that he had probable cause to arrest
Keathley.  The State points to the trooper’s testimony that the driver’s
cellophane bag containing marijuana was in plain view in the car before the
stop; that Keathley began to make furtive movements, including putting her
hands inside her shorts, immediately after the trooper arrested the driver for
possession of marijuana; and that, although unusual, suspects sometimes attempt
to hide contraband inside their pants.  Viewing the evidence in the light most
favorable to the trial court’s ruling, we hold that the trial court did not
abuse its discretion in holding that the trooper had probable cause to arrest
Keathley.  

      The trial court did not abuse
its discretion in overruling Keathley’s motion to suppress.  We overrule
Keathley’s issues and affirm the judgment.  

TOM GRAY

Chief
Justice

Before Chief Justice Gray,

      Justice Vance, and

      Justice
Reyna

      (Justice
Vance concurring with note)*

Affirmed

Opinion
delivered and filed June 14, 2006

Do
not publish

[CR25]

  *  “(Justice
Vance concurs in the judgment with a note:  I believe that we owe it to the
litigants, the higher courts, the Bench and Bar, and the public generally to
provide more of the facts, the arguments of the parties, and our analysis in
memorandum opinions.  For example, in the first issue, the suggestion in the
footnote is simply incorrect, as demonstrated on pages 15-18 of Keathley’s
brief (and pages 21-23 of the State’s response), where the events of her
prolonged detention are discussed, not just the initial right to detain the
driver.  I cannot join this opinion.)”

 









[1]  Although
Keathley states her issue in terms of her own detention, she argues the issue
only in terms of the initial detention of the driver.  








60;    The trial court also found that Griffitts’s life insurance policy interests did not constitute
notes. Griffitts does not show that the court erred.
      Griffitts purchased her interests in the life insurance policies from her individual
retirement account (“IRA”) by the use of promissory notes secured by the proceeds of the
policies. When the insurance company paid the insured’s death benefits, the trust company
paid the note.
      The use of a note to purchase an interest in a life insurance policy does not convert that
interest, which is otherwise not a security, into a security. See Life Partners, 87 F.3d at 548-49. The purpose of the use of a note is avoid running afoul of tax law restrictions on
investments by an IRA in insurance policies on the life of a person other than the holder of the
IRA. Id.
      Griffitts argues that we should use the analysis in Reves v. Ernst & Young to determine
whether her interests in life insurance policies constituted notes. See Reves v. Ernst & Young,
494 U.S. 56 (1990). Griffitts misapplies the Reves analysis. Griffitts applies the analysis to
the life insurance policies themselves, not to the promissory notes that she used in the purchase
of interests in the policies. For example, one of the Reves factors is “the ‘plan of distribution’
of the instrument” and “whether it is an instrument in which there is ‘common trading for
speculation or investment.’” Id. at 66 (quoting SEC v. C.M. Joiner Leasing Corp., 320 U.S.
344, 351, 353 (1943)). Griffitts points to summary judgment evidence that Life Partners had
“thousands of investors”; however, she does not point to evidence that these investors used
promissory notes.
      Accordingly, Griffitts does not show that the trial court erred in concluding that Griffitts’s
interests in life insurance policies did not constitute notes.
“Other Evidences of Indebtedness”
      The trial court also concluded that Griffitts’s life insurance policy interests did not
constitute “other evidences of indebtedness.” See Tex. Rev. Civ. Stat. Ann. art. 581-4(A). 
Griffitts does not show that the court erred.
      Griffitts scarcely argues this theory in less than a page. Griffitts notes that the Act’s term
“other evidence of indebtedness” is ejusdem generis of the Act’s phrase, “note, bond,
debenture, mortgage certificate.” Griffitts Br. at 43 (citing Thomas v. State, 3 S.W.3d 89, 93
(Tex. App.—Dallas 1999), aff’d, 65 S.W.3d 38 (Tex. Crim. App. 2001)). Griffitts apparently
argues that viatical settlements are similar to mortgage certificates, and cites Searsy in
connection with mortgage certificates; however, Searsy does not concern mortgage certificates. 
See id. at 43-44 (citing Searsy, 560 S.W.2d at 641-42). Griffitts does not otherwise argue that
viatical settlements are similar to mortgage certificates so as to constitute evidences of
indebtedness.
      Accordingly, Griffitts does not show that the trial court erred in concluding that Griffitts’s
interests in life insurance policies did not constitute evidences of indebtedness.
      The trial court concluded that Griffitts’s interests in life insurance policies did not
constitute securities on any of three theories. Griffitts does not show that the court erred as to
any of those theories. Therefore, Griffitts does not show that the trial court erred in
concluding that Griffitts’s interests in life insurance policies did not constitute securities.
Insurance Contracts
      The trial court also granted summary judgment on the ground that Griffitts’s interests in
life insurance policies fell within an insurance product exception to the definition of securities. 
The Securities Act excludes from the definition of security
any insurance policy, endowment policy, annuity contract, optional annuity contract,
or any contract or agreement in relation to and in consequence of any such policy or
contract, issued by an insurance company subject to the supervision or control of the
Texas Department of Insurance when the form of such policy or contract has been
duly filed with the Department as now or hereafter required by law.

Tex. Rev. Civ. Stat. Ann. art. 581-4(A). Since we find that the trial court did not err in
concluding that Griffitts’s interests in life insurance policies did not constitute securities, we do
not decide whether those interests are excepted from the definition of securities.
Conclusion
      Accordingly, Griffitts does not show that the trial court erred in rendering summary
judgment against Griffitts.
      The vast majority of Griffitts’s argument is devoted to Life Partners’ motion for summary
judgment. Griffitts scarcely argues her own motion. For the reasons stated above, Griffitts
does not establish that the trial court erred in concluding that Griffitts’s interests in life
insurance policies did not constitute securities. However, even if Griffitts’s interests in life
insurance policies could, as a matter of law, constitute securities, Griffitts does not show that
she is entitled to judgment as a matter of law.
      We affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna



(Justice Vance dissents with note: I would find that the viatical settlement contracts
and notes are securities under the Searsy-Howey four-pronged test and the Reves test. 
Searsy v. Commercial Trading Corp., 560 S.W.2d 637, 639-40 (Tex. 1977); Grotjohn
Precise Connexiones Int’l, S.A. v. JEM Financial, Inc., 12 S.W.3d 859, 868 (Tex.
App.—Texarkana 2000, no pet.).)
Affirmed
Opinion delivered and filed May 26, 2004
[CV06]