Filed 6/17/13  Aguiar v. Superior Court CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| PETER PAUL AGUIAR,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE OF THE STATE OF<br>CALIFORNIA,<br><br>        Real Party in Interest. | No. B245186<br><br>(Los Angeles County Super. Ct.<br>No. GA083867) |

        ORIGINAL PROCEEDINGS in mandate.  Janice Claire Croft, Judge.  Petition granted.

        Robert S. Gerstein; and Ivan L. Klein for Petitioner.

        Jackie Lacey, District Attorney of Los Angeles County, Phyllis C. Asayama and Shirley S. N. Sun, Deputy District Attorneys, for Real Party in Interest.

————————————————

Peter Paul Aguiar, charged with illegally cultivating marijuana and possessing marijuana for sale, seeks a writ of mandate compelling respondent superior court to suppress evidence of incriminating text messages found on his wife's cell phone. Police officers had removed the phone from a purse belonging to Claudia Paola Villarroel, Aguiar's wife, while they were attempting to serve an arrest warrant for Aguiar at the couple's home. The superior court denied the motion, finding Aguiar had no reasonable expectation of privacy in his wife's belongings.

The court's analysis was incomplete. If the officers saw the purse in plain view while lawfully in Aguiar's house or pursuant to a lawful search of the house, the search of the purse did not invade any protected privacy interest of Aguiar's. However, if the purse and cell phone were discovered only as a result of an unlawful search of his home, the fruits of that search should have been suppressed. Because the court erroneously ruled Aguiar did not suffer a Fourth Amendment violation whether or not the purse was the product of an illegal search of his home, we grant Aguiar's petition for writ of mandate and direct the superior court to vacate its order denying his motion to suppress and to determine in the first instance whether the cell phone was discovered lawfully or as part of an illegal search of Aguiar's home.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Information*

An information filed on March 13, 2012 charged Aguiar and Villarroel with cultivating marijuana (Health & Saf. Code, § 11358) and possession of marijuana for purposes of sale (Health & Saf. Code, § 11359).

### 2. *The Motion To Suppress*

On July 30, 2012 Villarroel moved pursuant to Penal Code section 1538.5 to suppress text messages between her and Aguiar found on her cell phone in her purse. On October 12, 2012 Aguiar filed a joinder in his wife's motion.

The People opposed the motion. As to Villarroel, the People argued the cell phone was retrieved as a result of a search incident to Villarroel's arrest, an exception to the rule

requiring a search to be supported by a warrant. As to Aguiar, the People argued he had no reasonable expectation of privacy in the contents of his wife's purse or her cell phone.

According to the evidence at the suppression hearing, officers from the Los Angeles Police Department arrived at Villarroel's home for purposes of serving a misdemeanor domestic violence arrest warrant on Aguiar. (Villarroel had made the domestic violence allegations.) When the officers arrived, Villarroel told them Aguiar was not at home. The officers, who did not have a warrant to search the home, asked Villarroel's permission to enter the house to verify that Aguiar was not there. Villarroel permitted the officers to enter the house and the backyard for that limited purpose. Once in the backyard, the officers observed in plain view numerous marijuana plants and instruments used for cultivating marijuana. Villarroel was arrested.

Officer Karel Castro, called to the scene to assist the officers in Spanish translation because Villarroel is a native Spanish speaker, testified Villarroel was sitting at the kitchen table when he arrived at the house. She was not handcuffed and had not been placed under arrest. Castro had a "faint memory" the purse containing the cell phone had been on the table next to Villarroel when he arrived, but he could not recall that fact specifically.[1] He also stated it was possible he had asked Villarroel's 13-year-old son, Paul Aguiar, who was sitting at the table next to his mother, to retrieve her purse so she could provide Castro with her identification. After Villarroel was handcuffed, arrested and placed in a police car, Castro conducted an inventory search of the purse and found the cell phone.

---

[1]    During direct examination, the prosecutor reminded Castro he had "previously testified" the purse had been on the table when he arrived. The prosecutor did not indicate when Castro had testified to that effect previously, and there is no prior testimony in the record provided in connection with the writ petition. Castro explained he thought the purse had been on the table when he retrieved it, but it was only a "faint memory." He also acknowledged he could not remember where exactly the purse had been on the table. On cross-examination Castro reiterated, "I believed I retrieved [the purse] from the table, but it's a faint memory and I wouldn't want to stake my job on it."

Paul Aguiar testified, after his mother was placed in the police car, a police officer came inside and asked him if he knew where his mother's cell phone was located. He told the officer the phone was in his mother's purse in her bedroom closet. He acknowledged he did not actually see the officer go to the bedroom, but he later saw one of the officers leave the house holding his mother's cell phone. He insisted he was sitting next to his mother at the kitchen table the entire time Castro was in the house and the purse had not been on the table.

Villarroel testified her purse had been hanging in her bedroom closet when she was arrested. She did not ask anyone to retrieve it. She later saw an officer holding her cell phone. Villarroel never consented to the search of her purse or her cell phone.

3. *The Court's Ruling Granting Villarroel's Suppression Motion and Denying Aguiar's Motion*

The court granted Villarroel's motion to suppress, finding she had a reasonable expectation of privacy in her purse and its contents and the People had failed to satisfy their burden to demonstrate the warrantless search of those items was justified as a search incident to an arrest. Specifically, the court found the People had not established the purse was next to Villarroel on the table or otherwise within her immediate control when it was searched. (See *Chimel v. California* (1969) 395 U.S. 752, 762-763 [89 S.Ct. 2034, 23 L.Ed.2d 685] [search incident to arrest is an exception to the warrant requirement; police may search person arrested and the area "'within his immediate control'" to remove weapons and secure evidence]; *People v. Schmitz* (2012) 55 Cal.4th 909, 927.)[2]

The court denied Aguiar's suppression motion on the ground he had "no standing" to assert a Fourth Amendment violation, that is, he had no reasonable expectation of privacy in his wife's purse or its contents. (See *People v. Ayala* (2000) 23 Cal.4th 225, 254, fn. 3 ["the United States Supreme Court has largely abandoned use of the word 'standing' in its Fourth Amendment analyses [citation] . . . without altering the nature of

_____

[2] The court explained its ruling, "I can't say they searched the house, but I don't know where the purse came from. Because I don't know where the purse came from, . . . I have to suppress the evidence."

4

the inquiry: whether the defendant, rather than someone else, had a reasonable expectation of privacy in the place searched or the items seized"].) The court did not decide whether the purse was discovered during an unlawful search of the home, finding that question immaterial to its standing analysis.[3]

## DISCUSSION

### 1. *Standard of Review*

In reviewing the ruling on a motion to suppress, the appellate court defers to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Redd* (2010) 48 Cal.4th 691, 719; *People v. Ayala, supra,* 23 Cal.4th at p. 255; *People v. James* (1977) 19 Cal.3d 99, 107.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court. (*James*, at p. 107.) However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*Redd*, at p. 719; *People v. Glaser* (1995) 11 Cal.4th 354, 362.)

---

[3] In colloquy with defense counsel the court insisted, if Aguiar did not contend he owned the purse or the cell phone itself, he had no protected privacy interest supporting a joinder in Villarroel's motion to suppress:

"[The Court]: . . . What I'm going to do, as soon as [Officer Castro] is finished, we'll put your client on and he can admit the purse and cell phone is his, I guess. [He] ha[s] standing in order to be here at this motion.

"[Defense Counsel]: No, he is not going to do that.

"[The Court]: Well, then he's not here. I'm not going to allow the joinder. If he doesn't own the cell phone and/or the purse, he's not going to be—

"[Defense Counsel]: Well, the search of the purse was a search of his house. He owns the house.

"[The Court]: No sir. It's a search of the purse."

2. *Governing Law*

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures in those areas in which a person has a reasonable expectation of privacy. (*Katz v. United States* (1967) 389 U.S. 347, 350-351 [88 S.Ct. 507, 19 L.Ed.2d 576]; *People v. Camacho* (2000) 23 Cal.4th 824, 831.)[4] "'In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one that has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."'" (*People v. Ayala, supra,* 23 Cal.4th at p. 255; accord, *Minnesota v. Carter* (1998) 525 U.S. 83, 88 [119 S.Ct. 469, 142 L.Ed.2d 373]; *Ohio v. Robinette* (1996) 519 U.S. 33, 39 [117 S.Ct. 417, 136 L.Ed.2d 347].)

The exclusionary rule, a judicially-created remedy for a Fourth Amendment violation, prohibits the introduction of evidence obtained in violation of an individual's Fourth Amendment rights at a criminal proceeding against that person. (*United States v. Calandra* (1974) 414 U.S. 338, 347 [94 S.Ct. 613, 38 L.Ed.2d 561]; *Rakas v. Illinois* (1978) 439 U.S. 128, 134, 144 [99 S.Ct. 421, 58 L.Ed.2d 387 .) To benefit from the exclusionary rule, the defendant must show his or her personal Fourth Amendment rights were violated, not the rights of someone else. (See *Rakas*, at p. 140 [a defendant whose Fourth Amendment rights have not been violated, but who is aggrieved by the introduction of evidence seized from another, is not entitled to the benefits of the

---

[4]     Searches conducted without a warrant are "'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219 [93 S.Ct. 2041, 36 L.Ed2d 854]; accord, *Flippo v. West Virginia* (1999) 528 U.S. 11, 13 [120 S.Ct. 7, 145 L.Ed.2d 16].) None of the recognized exceptions is at issue on appeal.

exclusionary rule; only defendants whose rights have been violated may benefit from the rule]; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 213 [same].)[5]

### 3. *Aguiar's Fourth Amendment Rights Were Violated if the Purse Was Discovered During an Illegal Search of His Home*

Evidence seized as a result of an unlawful search of the defendant's home is properly excluded in a criminal trial against the defendant, even if the evidence seized did not belong to the defendant, because the search itself violated the defendant's rights: "If the police make an unwarranted search of a house and seize tangible property belonging to third parties . . . , the homeowner may object to its use against him, not because he had any interest in the seized items as 'effects' protected by the Fourth Amendment, but because they were the fruits of an unauthorized search of his house, which is itself expressly protected by the Fourth Amendment." (*Alderman v. United States* (1969) 394 U.S. 165, 176-177 [89 S.Ct. 961, 22 L.Ed.2d 176]; accord, *United States v. Karo* (1984) 468 U.S. 705, 732 [104 S.Ct. 3296, 82 L.Ed.2d 530] (conc. & dis. opn. of Stevens, J. ["[i]t is certainly true that a homeowner has a reasonable expectation of privacy in the contents of his home, including items owned by others"]; *United States v. Issacs* (9th Cir. 1983) 708 F.2d 1365, 1368 [defendant suffered Fourth Amendment violation when journals were seized as a result of an unlawful search of his safe, even though defendant disclaimed ownership of the journals themselves].)

Contrary to respondent court's ruling, ownership of the purse and the cell phone is not dispositive of Aguiar's motion. If the purse was found and seized by the officers during an unlawful search of his home, his Fourth Amendment rights were violated; and he may object to use of the text messages at trial. To the extent the court ruled otherwise, it erred. (See *Alderman v. United States, supra,* 394 U.S. at p. 177; *Mancusi v. DeForte* (1968) 392 U.S. 364, 367, fn. 4 [88 S.Ct. 2120, 20 L.Ed.2d 1154] ["The fact that the

---

[5] Since the voters approved Proposition 8 in June 1982 ("Truth in Evidence" provision, Cal. Const. art. I, § 28), state and federal claims relating to exclusion of evidence on grounds of unreasonable search and seizure are measured by the same standard under the federal Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 888-890; *People v. Camacho*, *supra*, 23 Cal.4th at p. 830.)

seized papers belonged to the Union [and not to defendant] does not imply of itself that individual could never have personal standing to object to their admission against him. For example, state officers conceivably might have seized the papers during a search of DeForte's home, and in that event we think it clear that he would have had standing."]; see also *People v. Koury* (1989) 214 Cal.App.3d 676, 687 [once a person establishes a privacy interest in the residence that was improperly searched, "there is no need to further show an interest in the particular items which were seized by the police"]; *United States v. Issacs, supra,* 708 F.2d at p. 1368 [defendant's denial of ownership of journals found in safe in his home during illegal search of premises does not defeat homeowner's "legitimate expectation of privacy in the space invaded"]; *United States v. Perez* (8th Cir. 1983) 700 F.2d 1232, 1236 [homeowner had standing to challenge seizure of overnight guest's suitcase and its contents when the suitcase was found pursuant to an unlawful search of his home].)

### 4. *The Superior Court Must Determine in the First Instance Whether the Purse Was Discovered During an Illegal Search of Aguiar's Home*

Aguiar asserts, in granting Villarroel's motion to suppress, the trial court impliedly found her purse had been in the bedroom closet, as she and Paul Aguiar testified, and not on the kitchen table, as Officer Castro suggested. As a result, Aguiar argues, his suppression motion also should have been granted because it is undisputed the search of the closet was not justified.[6] Aguiar's argument—and the implied finding he posits— sweep too broadly under the circumstances presented.

In applying the substantial evidence rule to trial court orders, we adopt all intendments and inferences to affirm the order unless the record expressly contradicts them. (See *People v. Redd, supra,* 48 Cal.4th at p. 719; *In re Marriage of Arceneaux*

---

6    The People did not argue at the suppression hearing, and do not argue on appeal, that Villarroel's limited consent to enter the couple's home encompassed a right to search her bedroom closet. (See *Schneckloth v. Bustamonte, supra,* 412 U.S. at p. 219 [consent is an exception to the Fourth Amendment's proscription against warrantless searches]; *People v. Cantor* (2007) 149 Cal.App.4th 961, 965 ["'[a] consensual search may not legally exceed the scope of the consent supporting it'"].)

8

(1990) 51 Cal.3d 1130, 1133.) We do not infer findings to reverse an order unless the record permits no other inference. Here, the record does not compel the inference Aguiar suggests, that the purse was found in the bedroom closet. In fact, in granting Villarroel's motion and denying Aguiar's, the court expressly declined to decide whether any search of the home had taken place: "I'm not sure there was a warrantless search. . . . I can't say they searched the house." Accordingly, the only finding that may be properly inferred from this record is, wherever it was, the purse was not within Villarroel's "immediate control" so that seizing it and searching its contents constituted a valid search incident to her arrest (see *Chimel v. California, supra,* 395 U.S. at pp. 762-763).

Even if the purse was outside Villarroel's control, however, it may have been in plain view of the officers who had a legitimate right to be in the home. A search and seizure of the closed purse under those circumstances would have certainly violated Villarroel's Fourth Amendment rights and required suppression of the evidence as to her. (See *People v. Shepherd* (1994) 23 Cal.App.4th 825, 828 [defendant has reasonable expectation of privacy in contents of her own purse when purse is in her possession or control or in her own home and not left or abandoned in public place]; *United States v. Davis* (9th Cir. 2003) 332 F.3d 1163, 1168 ["'[a] person has an expectation of privacy in his or her private, closed containers'"].)

However, a search of the purse under those circumstances would not have violated any Fourth Amendment right of Aguiar's because the purse would not have been discovered during an unlawful search of his home. (*Alderman v. United States, supra,* 394 U.S. at pp. 176-177; see *Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 634 [it is a "salutary rule of law that observations of things in plain sight from a place where a police officer has a right to be do not amount to a search in the constitutional sense"].) To claim a Fourth Amendment violation and benefit from the exclusionary rule, Aguiar would have to demonstrate he had a separate, reasonable expectation of privacy in the purse itself. (See *United States v. Meyer* (7th Cir. 1998) 157 F.3d 1067, 1080 [where officers had warrant to search defendant's home, search of refrigerator found within curtilage of the home did not violate any Fourth Amendment right of defendant

9

homeowner unless he could demonstrate a reasonable expectation of privacy in the refrigerator itself: "In the present case, the police entered Hoff's curtilage pursuant to a valid warrant. Therefore, Hoff cannot raise a claim based on an unauthorized search of his curtilage. Hoff cannot assert a protected interest in the refrigerator based solely on the fact that the refrigerator was within his curtilage. He must establish that he had a reasonable expectation of privacy in the refrigerator."]; *Lenz v. Winburn* (11th Cir. 1995) 51 F.3d 1540, 1549 ["Thus, in a variety of circumstances, courts have held that a person does not have a reasonable expectation of privacy in another's belongings. [Citations.] This is true even when the person claiming the Fourth Amendment right has a reasonable expectation of privacy in the premises where the other's property was found"]; see generally 6 LaFave, Search and Seizure (5th ed. 2012) § 11.3(a), p. 175 ["[a] person in possession of premises has standing with regard to a search of those premises and also as to a seizure of objects therein, and thus may have suppressed the fruits of either type of intrusion if found to be illegal, but does not also have standing as to the *search* of a container belonging to another within the premises, at least if the police presence on the premises was otherwise lawful"] (fns. omitted).)[7] Thus, if the purse was not discovered as part of an unlawful search, an order denying Aguiar's suppression motion would be proper.[8]

---

[7] Aguiar does not contend he had a reasonable expectation of privacy in Villarroel's purse itself or its contents. Accordingly, we have no occasion to consider under what circumstances, if any, a person may claim a reasonable expectation of privacy in the contents of a purse or bag belonging to his or her spouse. (Cf. *Rawlings v. Kentucky* (1980) 448 U.S. 98, 105-106 [100 S.Ct. 2556, 65 L.Ed.2d 633] [record at hearing on motion to suppress drugs defendant had placed in his acquaintance's purse, including defendant's admission at hearing that he did not believe purse would be free from government intrusion, supported conclusion defendant had failed to demonstrate he had a reasonable expectation of privacy in his friend's purse].)

[8] At oral argument Aguiar asserted the officers' entry into the home was unlawful. Because Aguiar did not raise this argument in his petition or supporting papers (or for that matter, at the suppression hearing itself), we treat it as forfeited. (See *People v. Thompson* (2010) 49 Cal.4th 79, 110, fn. 13 [argument not made in briefs cannot be

*People v. Koury, supra,* 214 Cal.App.3d 676, on which Aguiar relies, is not to the contrary. In that case police searched the home of Koury's estranged wife pursuant to a search warrant and, during the search, found a zippered pouch, a locked briefcase and two closed suitcases, all containing cocaine. The pouch, briefcase and one of the suitcases belonged to Hernandez, a house guest. Hernandez moved to suppress the evidence on the ground it was discovered without a warrant authorizing the search of his items. Koury moved to suppress the evidence on the ground the affidavit used to support the warrant to search his home was legally inadequate and contained misrepresentations and omissions. Koury and Hernandez also filed joinders in each other's motions to suppress. (*Id.* at pp. 681-682)

The People asserted neither Koury nor Hernandez lived at the home and thus lacked standing to assert a Fourth Amendment violation. The trial court agreed and denied their motions to suppress. The Court of Appeal, however, rejected that argument, finding Koury and Hernandez could assert Fourth Amendment claims. Koury and his wife were still legally married; Koury had a key to the residence and regularly visited overnight. This evidence of joint control of the premises was sufficient to support Koury's assertion of a reasonable expectation of privacy in the home, giving him the right to challenge the search of containers seized during an unlawful search of his home. Although the court also held Hernandez had a reasonable expectation of privacy in his own luggage and closed containers and thus had standing to challenge the search of those items, it did not hold, as Aguiar suggests, Koury could challenge the search of Hernandez's possessions if the search of the house itself was otherwise lawful. (*People v. Koury, supra*, 214 Cal.App.3d at p. 689.) Because the hearing on the suppression motions was "cut short" after the trial court found neither Koury nor Hernandez could assert a Fourth Amendment violation, the court remanded for the trial court to consider

---

properly raised at oral argument]; *New Plumbing Contractors Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098 [same].)

11

the merits of Koury's and Hernandez's arguments relating to the validity and scope of the warrant. (*Id.* at p. 691.)

Like Koury, Aguiar has a reasonable expectation of privacy in his home[9] and may assert a Fourth Amendment violation if the purse containing the incriminating evidence was found during an unlawful search of his closet. However, if Villarroel's purse was in plain sight of where the officers had a legitimate right to be and thus not discovered during an unlawful search of his home, the search and seizure of Villarroel's purse, in which Aguiar claimed no privacy interest, did not violate Aguiar's Fourth Amendment rights. The superior court made no express finding on this point, and none may be inferred by this court on the record before us. Accordingly, we grant Aguiar's petition and direct respondent court to vacate its order denying the motion to suppress and to determine, either on the basis of the existing evidentiary record or with additional testimony, whether the purse and its contents were the fruits of an unlawful search of Aguiar's home.

---

[9]    At oral argument the People alleged Villarroel had obtained a restraining order against Aguiar, thus vitiating any expectation of privacy he would have otherwise had in the home. There is no evidence as to the scope of the restraining order in the record. The mere fact of the restraining order itself, without more, is insufficient to eliminate any reasonable expectation of privacy in one's home. (See *People v. Thompson* (1996) 43 Cal.App.4th 1265, 1270 [restraining order obtained by landlord against defendant did not deprive defendant of legitimate expectation of privacy in premises defendant rented from landlord when defendant had not been lawfully evicted, had a private room in which he kept his personal property and retained a key].)

12

## DISPOSITION

The petition is granted.  Let a peremptory writ of mandate issue directing respondent Los Angeles Superior Court to vacate its order of October 19, 2012 denying Aguiar's motion to suppress the text messages found on the cell phone; to determine in the first instance whether the purse and its contents were the fruits of an unlawful search of Aguiar's home; and to conduct further proceedings not inconsistent with this opinion.


PERLUSS, P. J.


We concur:


WOODS, J.


ZELON, J.

13