J-A04003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL L. GAULT, | |
| Appellant | No. 810 WDA 2014 |

Appeal from the Judgment of Sentence April 15, 2014
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001827-2013

BEFORE:  BOWES, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 11, 2015**

Michael L. Gault appeals from the judgment of sentence of one year probation after he was found guilty of possession of a controlled substance--marijuana, possession of a small amount of marijuana, and possession of drug paraphernalia following a non-jury trial.   We affirm.

At approximately 9:15 p.m. on November 11, 2013, Officer Jeremiah Christner received a call from 911 regarding an assault at 23 South High Street, Apartment 101, Greenville, Pennsylvania, Mercer County.   The dispatch indicated that a resident had been attacked by individuals who had broken into an apartment.   Officer Christner responded to that address and found the front door open and the doorjamb damaged.   Appellant was inside

---

[*]  Retired Senior Judge assigned to the Superior Court.

and bleeding extensively from his head. He indicated to the officer that he had been assaulted in his bedroom, which was on the same floor and visible from the front door. After paramedics arrived to treat Appellant, Officer Christner entered the bedroom to investigate. Upon entering, Officer Christner observed that an entertainment center was damaged and blood was throughout the room. In addition, he saw in plain view a charred metal pipe on the top of a dresser, which appeared to be a crack pipe. Officer Christner also observed a night stand with a drawer open that contained a metal spoon with burned substance in the spoon. He believed that the spoon was consistent with heroin use. Officer Christner also found a pill bottle in the drawer and two small digital scales with marijuana on them. He opened the bottle and inside was marijuana.[1]

Appellant filed a suppression motion that was denied in part and granted in part. Specifically, the court suppressed the marijuana evidence found inside the pill bottle. However, it concluded that the discovery of the pipe and metal spoon fit within the plain view exception to the warrant requirement. The court made no specific findings regarding the digital scales at the suppression hearing, but did not suppress the scales or small

---

[1] Appellant has failed to supply this Court with the transcript from the trial. We glean the facts of this case from the suppression transcript, which also was originally not part of the certified record. The Commonwealth did not argue waiver and this Court directed the lower court to transmit a copy of the suppression hearing transcript.

amount of marijuana thereon. Appellant proceeded to a non-jury trial before a different judge. The court found Appellant guilty of the aforementioned charges.[2] Appellant timely appealed. The court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored a Rule 1925(a) decision.

The matter is now ready for this Court's review. Appellant's sole challenge on appeal is, "Under the Fourth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 8 of the Pennsylvania Constitution, did the trial court err in failing to suppress evidence obtained as a fruit of the warrantless police search of Michael Gault's bedroom?" Appellant's brief at 4.

In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the suppression record. *Commonwealth v. Sanders*, 42 A.3d 325, 330 (Pa.Super. 2012). This Court is bound by the factual findings of the

---

[2] We are aware that in *Commonwealth v. Gordon*, 897 A.2d 504 (Pa.Super. 2006), this Court held that it was improper to find a person guilty of possession of marijuana and not the more specific crime of possession of a small amount of marijuana where the amount of marijuana fell within the small amount of marijuana statute. Appellant has not raised this issue and we are without a trial transcript to discern the weight of marijuana at issue. Hence, Appellant has waived any contention under *Gordon*.

suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Id*.

Appellant argues that the warrantless search of his apartment bedroom violated both his Fourth Amendment and Article I, § 8 right to be free from unreasonable searches and seizures. He contends that the suppression court erred in failing to consider the absence of exigent circumstances. In addition, according to Appellant, the consent exception to the warrant requirement did not extend into his bedroom nor do the search incident to arrest or immediate aid exception apply.

The current version of Article I, § 8 of the Pennsylvania Constitution provides,

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed by the affiant.

Pa.Const., Article I, § 8. Similarly, the Fourth Amendment reads,

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S.Const. Am. IV. Appellant has not delineated any separate challenge under the Pennsylvania Constitution. Accordingly, we do not consider whether our state charter offers greater protections herein.

Ordinarily, law enforcement must obtain a warrant before conducting a search. *Commonwealth v. Lagenella*, 83 A.3d 94, 102 (Pa. 2013). In this respect, warrantless searches are generally presumed unreasonable. *Commonwealth v. Taylor*, 771 A.2d 1261, 1266 (Pa. 2001). Nonetheless, there are exceptions to the warrant requirement, including consent. *See Commonwealth v. Cleckley*, 738 A.2d 427, 429 (Pa. 1999); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").

This Court has held that, in the situation where a defendant telephones police or emergency personnel regarding potential criminal activity, he or she impliedly consent to a search of the premises that is reasonably related to an investigation of the alleged crime. *See Commonwealth v. Witman*, 750 A.2d 327, 335 (Pa.Super. 2000) (collecting and discussing case law from other jurisdictions). Appellant distinguishes *Witman* on the ground that therein the defendant had summoned police whereas, in the instant case, a neighbor alerted police to the assault.

In *Witman*, the defendant telephoned 911. Police and other emergency personnel responded within ten minutes of the call. An EMT informed the first police officer to arrive that he had a crime scene. The defendant's thirteen year old brother was, in fact, deceased. The defendant

was reportedly in an excited state, holding a telephone, with blood visible on both the phone and the defendant's hands and shirt. According to the first officer on the scene, the defendant stated that he had left a key in the door for his brother and had been sleeping. The defendant then reported that he heard a thud downstairs and discovered his brother. The officer then walked to a doorway in the garage leading to a laundry room, where he saw the body of the victim.

Police then began to mark off the scene. An additional officer performed what he described as a security sweep of the home. In doing so, he observed drops of blood on the kitchen floor and a large amount of blood in a hallway. In addition, he saw a broken table, a jacket, book bag, and key ring neck chain. The officer also found blood on the front door and on the walls in a foyer area. Subsequently, police began to process the scene. The mother of the victim arrived and told police to find the person who committed the crime. Police did not secure a search warrant for the home at that time.

The father of the victim also spoke with police approximately four and one-half hours later while he was at the hospital with the defendant. According to one officer, he told the victim's father that they were processing the scene and the father told police to do whatever it took. Approximately nine hours after arriving at the house, around 12:30 a.m., police, using Luminol, were led by a blood trail to an outdoor dirt mound.

They unearthed a knife and athletic gloves. Subsequently, police secured a warrant. The suppression court originally suppressed sixteen items taken from the house as part of the investigation as well as other items not material herein. This Court reversed the suppression court's ruling as to the warrantless seizures.

The panel first found "that a sound exception to the warrant requirement must exist where a defendant has summoned police and set the tone for the initial investigation." *Id*. at 335. Quoting ***Brown v. Texas***, 856 S.W.2d 177, 182 (Tex.Crim.App. 1993), the ***Witman*** Court set forth:

> when a crime is reported to the police by an individual who owns or controls the premises to which the police are summoned, and that individual either states or suggests that it was committed by a third person, he or she implicitly consents to a search of the premises reasonably related to the routine investigation of the offense and the identification of the perpetrator. As long as the individual is not a suspect in the case or does nothing to revoke his consent, the police may search the premises for these purposes, and evidence obtained thereby is admissible. This implied consent is valid only for the initial investigation conducted at the scene and does not carry over to future visits to the scene.

***Witman***, ***supra*** at 335. The ***Witman*** Court held that "in summoning emergency personnel for help and by communicating to police the idea that a murderer was at large, appellee implicitly consented to the police entry into the house." ***Id***.

The panel then discussed the protective sweep that occurred and determined that the sweep was warranted. It opined that the defendant's call to 911 and his statements to police upon their arrival created reasonable

grounds to conclude that the perpetrator might have still been present. The Court added that the continued investigation in the home, without a warrant, was permissible based on the defendant's implied consent. *Id*. at 337. The ***Witman*** panel also reasoned that the defendant's mother and father had consented to the searches.

We find, under the totality of the circumstances presented in this matter, that it is immaterial that Appellant did not first alert police of the attack inside his residence. Based on the telephone call, police were justified in responding to Appellant's home. When Officer Christner arrived, the door to Appellant's apartment was ajar and it appeared that it had been forced open. Thus, Officer Christner was warranted in proceeding inside. Once inside, Officer Christner encountered Appellant, who was bleeding profusely from a head wound. Officer Christner was lawfully inside the apartment. ***See Witman***, ***supra***; ***Flippo v. West Virginia*** 528 U.S. 11, 14 (1999) ("police may make warrantless entries onto premises if they reasonably believe a person is in need of immediate aid and may make prompt warrantless searches of a homicide scene for possible other victims or a killer on the premises[.]").

Appellant contends that, while Officer Christner was lawfully entitled to enter his apartment, he was not permitted to enter the bedroom. Based on these facts, we find that Officer Christner had implied consent to enter the bedroom to investigate the crime. Appellant cites no legal authority

supporting the view that an officer lawfully at the scene of a crime, which is a residence, is required to secure a search warrant to enter a bedroom identified as the precise place of the crime by the victim. *Compare Mincey v. Arizona*, 437 U.S. 385 (1978) (no warrantless exception based on homicide crime scene where law enforcement conducted a four-day search); *Flippo v. West Virginia*, *supra*.

We are aware that in *Mincey*, *supra*, the United States Supreme Court held that there was no murder crime scene exception to the warrant requirement. It reiterated that ruling in *Flippo*, *supra*. The facts of those decisions, however, are readily distinguishable. In *Mincey*, an undercover officer, Barry Headricks, arrived at the apartment of the defendant after earlier arranging to purchase heroin. The officer was accompanied by nine plain-clothed officers and a deputy county attorney. When an individual opened the door, Headricks entered, and the individual attempted to slam the door to prevent the additional men from entering. Shots were then fired from the bedroom, and Headricks exited and collapsed on the floor from being shot. He died several hours later. The defendant was found on the floor of the bedroom, wounded.

Police also found a young woman who was wounded in a bedroom closet and another individual with a head wound was in the living room. They did not perform any other search or investigation, and guarded the suspects and premises. Having learned of the shooting, homicide detectives

arrived within ten minutes and began an exhaustive four-day search of the apartment without a warrant.

The *Mincey* Court first rejected the prosecution's assertion that Mincey forfeited his expectation of privacy by shooting Officer Headricks. It then addressed the government's additional position that the possible homicide resulted in an emergency-situation justifying the four-day search. While noting that police may enter a place to render immediate aid without a warrant and search if additional victims or assailants are on the premises, the High Court concluded that the search must be confined to the exigencies of the circumstances. The Court held, "a four-day search that included opening dresser drawers and ripping up carpets can hardly be rationalized in terms of the legitimate concerns that justify an emergency search." *Id*. at 393.

This case involves an investigation that began at the behest of a neighbor and in response to Appellant's own recounting of being attacked. It does not involve a search of the entire apartment or a four-day search of Appellant's bedroom. Indeed, unlike *Mincey*, where police were clearly looking for evidence of crimes committed by the defendant, in the present case, police were seeking evidence of a crime against the victim based on his own version of what transpired. *Mincey* is inapposite.

Likewise, *Flippo* does not compel reversal. In *Flippo*, the defendant and his wife were staying in a cabin at a state park. The defendant

telephoned 911, and reported that he and his wife had been attacked. Police responded, and found the defendant outside the cabin with various injuries. An officer then entered the cabin and discovered the defendant's wife, who was deceased. Police searched the exterior of the cabin for signs of forced entry or for footprints. Subsequently, police re-entered the cabin and began to process the crime scene without a warrant. For sixteen hours, police photographed the area, collected evidence, and opened a briefcase located inside the cabin, which contained photographs and negatives. The defendant moved to suppress the photos and negatives. The *Flippo* Court expressly declined to offer any opinion as to whether the defendant's actions impliedly consented to the search. Instead, the Court ruled that the trial court had erred in considering the search permissible because it was undertaken as part of a homicide investigation.

Our decision today should not be construed as creating a crime scene exception to the general search warrant requirement. Rather, Appellant's cooperation with the police investigation after they arrived signified his consent to allow police to conduct a reasonable investigation into the crime against him. Appellant did not ask the officer to leave. He answered questions regarding the identity and number of his attackers. Appellant maintained that he could not identify his assailants but told Officer Christner that the assault occurred inside his bedroom. Officer Christner proceeded to enter the bedroom to investigate the assault, not to conduct a search for

evidence against Appellant. Based on the facts, we find that Appellant permitted police to enter the area where the attack occurred to look for evidence of that crime. **Cf. Witman**, *supra*; **Cason v. State**, 780 A.2d 466 (Md.App. 2001). Upon entering the bedroom, Officer Christner observed the evidence establishing Appellant's guilt in plain view.

Judgment of sentence affirmed.

Judge Olson joins in this memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2015